# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KEITH HENDERSON, # 629788,

    Petitioner,

v.                                                                Case Number: 3:16-cv-13223

DUNCAN MACLAREN,

    Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

### I. INTRODUCTION

Michigan prisoner Keith Henderson ("Petitioner") filed this habeas corpus petition under 28 U.S.C. § 2254. Petitioner, who is proceeding *pro se*, was convicted of first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a), and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. He raises five claims for habeas corpus relief related to the alleged ineffectiveness of his trial and appellate counsel, failure to preserve exculpatory evidence, and sufficiency of the evidence. For the reasons explained in this order, these claims lack merit, and the court will deny the petition.

### II. BACKGROUND

Petitioner's convictions arise from the shooting death of sixteen-year-old James Hudson in Detroit on July 21, 2010. The shooting occurred near the intersection of Garfield Avenue and Leroy Avenue in Detroit, during a melee involving dozens of people. Cordaryl Massey, Petitioner's cousin, was originally charged along with

Petitioner for first-degree murder. Massey testified pursuant to a plea agreement which allowed him to plead guilty to manslaughter. Massey testified that on the afternoon of July 21, 2010, he and his friend, Cornelius Barnes, went to Barnes' aunt's house near the intersection where the shooting occurred. When they arrived, a large group of people was arguing in the street. About 20 minutes later, the argument escalated into a fight. Massey described the scene this way: "Everybody was running everywhere, throwing bricks, swinging poles and fightin'." (ECF No. 10-3, PageID 382.) Someone then pulled out a shotgun and started shooting, and Massey ran behind a house and called his cousin, Petitioner. Massey told Petitioner "Come to Glenfield and Leroy. They over here shootin' at me." (*Id.* at 385.) Petitioner replied that he was on his way. According to Massey, Petitioner arrived about 10 minutes later and asked: "Who shootin' at my cousin?" (*Id.* at 387.) Massey and a few other people pointed toward the crowd and Petitioner began shooting. After firing shots into the crowd, Petitioner fled the scene in his vehicle. Several witnesses testified at trial and gave similar versions of these events.

Randall Hall was present at the time of the shooting and testified that he saw a man with a gun exit a vehicle and ask "who shootin' at my cousins". (ECF No. 10-4, PageID 545.) Ciera Brown testified that she saw Petitioner jump out of a car carrying a gun, look around for a minute, then start firing down the street toward a group of people. Joshua Hudson, the victim's brother, testified that he saw a green car stop and Petitioner exit the car. Hudson stated that Petitioner started shooting in his direction and that his brother, the victim, was struck by a bullet when the two tried to run away.

Petitioner did not testify in his own defense.

2

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of first-degree premeditated murder and possession of a firearm during the commission of a felony. The court sentenced him to life in prison without parole for the first-degree murder conviction and two years for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals raising a single claim based on the sufficiently of the evidence used to sustain the first-degree premeditated murder conviction. The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Henderson,* No. 309460, 2013 WL 1223206, at *1 (Mich. Ct. App. Mar. 26, 2013). Petitioner's application for leave to appeal was denied by the Michigan Supreme Court. *People v. Henderson*, 835 N.W.2d 583 (Mich. 2013).

Petitioner then filed a motion for relief from judgment in the trial court. He raised six claims in this motion: (i) ineffective assistance of counsel in advising Petitioner to reject a plea offer; (ii) ineffective assistance of counsel in failing to object to the admission of evidence offered in violation of the Confrontation Clause; (iii) failure of the police to preserve known exculpatory evidence and ineffective assistance of counsel in failing to file a motion to dismiss on this basis; (iv) insufficiency of the evidence to support the premeditation element of first-degree murder; (v) imposition of improper court costs against Petitioner; and (vi) ineffective assistance of appellate counsel. The trial court denied each claim on the merits. (ECF No. 10-10.) The Michigan Court of Appeals denied leave to appeal, as did the Michigan Supreme Court. (ECF Nos. 10-11, 10-12.)

Petitioner then filed the pending habeas petition which raises the following claims:

I. Ineffective assistance of counsel based on trial counsel's advice that Petitioner should reject the offered plea.

II. Ineffective assistance of counsel based on trial counsel's failure to object to testimony referencing the autopsy report offered in violation of the Confrontation Clause.

III. Violation of Petitioner's due process rights based on the police's failure to preserve exculpatory evidence, and ineffective assistance of counsel based on counsel's failure to move for dismissal on this basis.

IV. Insufficiency of the evidence to sustain the conviction for premeditated, first-degree murder.

V. Ineffective assistance of appellate in failing to raise certain arguments on appeal.

### III. STANDARD

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–

4

06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation omitted). The Supreme Court has emphasized, "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Although 28 U.S.C. § 2254(d) does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, a federal court may grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

5

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. *Id.* Moreover, for claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV. DISCUSSION

### A. Ineffective Assistance of Trial Counsel Claims

Petitioner's first and second claims concern the assistance of trial counsel. Petitioner argues that defense counsel was ineffective when he advised Petitioner not to accept a plea offer and in failing to object to the medical examiner's testimony regarding the autopsy because the testifying medical examiner did not perform the autopsy. Respondent argues that these ineffective assistance of counsel claims—in addition to Petitioner's third claim for relief—are procedurally defaulted and meritless. Procedural default is not a jurisdictional bar to review of a habeas petition on the merits. *Trest v. Cain*, 522 U.S. 87, 89 (1997). "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). The court finds it is more efficient to cut to the merits of these claims and will reject them for the reasons explained below.

A violation of the Sixth Amendment right to effective assistance of counsel occurs when an attorney's performance was deficient and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of

6

reasonableness." *Id.* at 688. To establish prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

The standard for obtaining habeas corpus relief is "'difficult to meet.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). In the context of ineffective assistance of counsel claims under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable" but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

First, the court addresses Petitioner's claim that counsel gave misleading advice regarding the prosecution's plea offer which caused Petitioner to reject the offer. The prosecutor offered Petitioner a sentence of 28 to 50 years for a second-degree murder guilty plea and a sentence of two years for felony firearm. Petitioner alleges that defense counsel advised him to reject the plea offer because the prosecutor would not be able to establish beyond a reasonable doubt the intent element of first-degree premeditated murder.

7

Petitioner raised this claim for the first time in a motion for relief from judgment in the trial court. The trial court applied the *Strickland* standard and denied the claim. (ECF No. 10-10, PageID 918–19.) The trial court found that counsel discussed the plea offer with Petitioner on several occasions and that Petitioner understood that if he were convicted of first-degree murder, he would be sentenced to a mandatory term of life imprisonment without parole. *Id.* The trial court found Petitioner's characterization of his conversations with defense counsel not to be credible. *Id.* This court must defer to the credibility determinations of the trial court. *See Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

The record establishes that Petitioner knew he risked a mandatory life sentence if he proceeded to trial and that the decision to reject the plea was his own. Counsel's belief that the prosecution would have some difficulty establishing intent is not without support in the record. However, that counsel's assessment of the strength of the prosecution's case ultimately proved incorrect does not prove that counsel was constitutionally ineffective. *See Nix v. Whiteside,* 475 U.S. 157, 165 (1986) (quoting *Strickland*, 466 U.S. at 689) ("To counteract the natural tendency to fault an unsuccessful defense, a court reviewing a claim of ineffective assistance must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"). "Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks." *Premo v. Moore*, 562 U.S. 115, 124 (2011). This makes "strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage." *Id.* at 125. Petitioner

8

has not satisfied is burden of proving deficient attorney performance under this highly deferential standard.

Petitioner also argues that defense counsel was ineffective in failing to object to the medical examiner Dr. Lokman Sung's testimony because Dr. Sung did not perform the autopsy of the victim. The medical examiner who performed the autopsy, Dr. Pietek, retired by the time of Petitioner's trial. Petitioner argues that he was unable to cross-examine Dr. Pietek about his conclusion regarding the victim's cause of death, in violation of his right of confrontation. Petitioner raised this claim for the first time on collateral review in state court. The trial court held that counsel was not ineffective in failing to object to this testimony because the testimony was properly admitted, and, alternatively, Petitioner was not prejudiced by the admission of this testimony because the parties did not dispute the cause or manner of death. (ECF No. 10-10, PageID 920.)

The Supreme Court has not clearly held that autopsy reports are testimonial in nature and, thus, subject to the Confrontation Clause's prohibition against the admission of testimonial hearsay. *See Mitchell v. Kelly*, 520 Fed. App'x 329, 331 (6th Cir. 2013) ("[T]he decision of the Ohio Court of Appeals was not an unreasonable application of *Crawford* given the lack of Supreme Court precedent establishing that an autopsy report is testimonial."). The court defers to the state court's finding that the evidence was properly admitted and as such, counsel was not ineffective for failing to raise a meritless objection. *Mapes v. Coyle,* 171 F.3d 408, 427 (6th Cir. 1999).

### B. Preservation of Evidence

In his third claim, Petitioner argues that the police acted in bad faith when they failed to preserve known exculpatory evidence—Cordaryl Massey's cell phone. Massey

9

testified that he called Petitioner from his cell phone to tell Petitioner to come to his location because someone was shooting at him. Petitioner argues that this phone call did not occur and that the cell phone would have allowed him to prove that Massey did not phone him. Sometime after the shooting, Massey gave the phone to his mother who later gave it to a cousin. Police did not recover the cell phone.

The Due Process Clause requires that the State disclose to criminal defendants "evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." *California v. Trombetta*, 467 U.S. 479, 485 (1984). "Separate tests are applied to determine whether the government's failure to preserve evidence rises to the level of a due process violation in cases where material exculpatory evidence is not accessible versus cases where 'potentially useful' evidence is not accessible." *United States v. Wright*, 260 F.3d 568, 570-71 (6th Cir. 2001) (internal citations omitted). A defendant's due process rights are violated where material exculpatory evidence is not preserved. *Trombetta*, 467 U.S. at 489. Exculpatory evidence is material if it possesses "an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 488–89. The destruction of material exculpatory evidence violates due process regardless of whether the government acted in bad faith. *See id.* at 488; *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988). However, "the Due Process Clause requires a different result when . . . deal[ing] with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 56. "[U]nless a criminal

10

defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at 58.

The trial court, the last state court to issue a reasoned decision on this claim, found no due process violation. (ECF No. 10-10, PageID 920–21.) The state court determined that, because Massey testified that he disposed the phone after the shooting, the police never had custody of the phone and, therefore, did not act in bad faith in failing to preserve the phone for Petitioner. The state court also found that the phone had no exculpatory value. (*Id.* at 921.)

The trial court's decision is not unreasonable. The most that can be said of the phone was that it was potentially exculpatory. However, the failure to preserve *potentially* useful evidence does not violate a defendant's Due Process rights in the absence of bad faith on the part of police. *Youngblood*, 488 U.S. at 57–58. Moreover, police have no duty to *collect* potentially exculpatory evidence. *See Miller v. Vasquez*, 868 F.2d 1116, 1119 (9th Cir. 1988) ("Since, in the absence of bad faith, the police's failure to *preserve* evidence that is only potentially exculpatory does not violate due process, then *a fortiori* neither does the good faith failure to *collect* such evidence violate due process."). Where the police did not have possession of the phone, Petitioner cannot show that the police acted in bad faith in failing to preserve it.

Petitioner's related claim regarding counsel's ineffectiveness in failing to raise this issue in the trial court is meritless. The trial court held that this claim failed on *Strickland's* performance and prejudice prongs. As discussed, where police did not possess the cell phone, they could not be charged with preserving it. Additionally, given multiple eyewitnesses' testimony that Petitioner pointed at and shot multiple times in the

11

direction of a crowd, Petitioner fails to show he was prejudiced by counsel's failure to raise this issue in the trial court.

## C. Sufficiency of the Evidence

In his fourth claim, Petitioner argues that insufficient evidence supported the element of premeditation and deliberation to for his first-degree premeditated murder conviction. He argues that he acted in the heat of the moment when he responded to a report that someone was shooting at Massey. Petitioner maintains that his "hot blood clearly makes this, at most, a second degree murder conviction and not first degree." (ECF No. 1, PageID 26.)

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). "Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204–05 (6th Cir. 2009)). First, the court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205 (citing *Jackson,* 443 U.S. at 319). Second, if the court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.* In short, "deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; [then] deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by

AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (citation omitted). The *Jackson* standard is "exceedingly general" and, therefore, Michigan courts are afforded "considerable leeway" in its application. *Davis v. Lafler*, 658 F.3d 525, 535 (6th Cir. 2011).

Michigan law for first-degree murder requires that the prosecution prove that the defendant intentionally killed the victim and that the killing was premeditated and deliberate. *People v. Anderson*, 531 N.W.2d 780, 786 (Mich. Ct. App. 1995). Premeditation and deliberation may be established by evidence showing: "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v. Schollaert*, 486 N.W.2d 312, 318 (Mich. Ct. App. 1992). Further, the jury may consider the emotional state with which the killing was carried out, whether the instrument used was "naturally adapted to produce death," and the defendant's statements before, during, and after the killing. *Henderson*, 2013 WL 1223206 at *1 (internal quotations omitted).

The Michigan Court of Appeals found that the prosecution presented sufficient evidence was presented to prove premeditation beyond a reasonable doubt:

> The evidence overwhelmingly suggests that defendant had an opportunity to "take a second look." *Unger*, 278 Mich. App at 229. At least seven witnesses saw defendant drive westbound on Glenfield Avenue with a female passenger, stop in the middle of the intersection of Leroy Avenue, get out of the car, and ask who was shooting at Massey. These pre-killing actions . . . support a rational inference of the premeditation and deliberation element.
>
> Three witnesses testified that after defendant exited the green car, he asked either, "Who shootin' at my people?", or, "[W]ho shootin' at my cousins?", or, "Shoot who?", while armed with a handgun. Barnes said that Massey told defendant, "[S]hoot, shoot," and Massey testified that he,

13

>Barnes, and others pointed down the street, which a reasonable jury could have read as encouragement to shoot that way. Seven witnesses saw defendant point a handgun south and fire a handgun into a crowd that was dispersing in the direction Massey, Barnes, and others pointed. An eighth witness, with a sense of self-preservation unique to this case, saw defendant's car pull into and stop in the intersection, but almost immediately fled, sensing that "it was about to be problems," and did not see defendant fire the gun. Defendant's question to the bystanders, and his reaction to their answer—pointing the gun in the direction he was told to— support a circumstantial finding of premeditation and deliberation . . .
>
>Seven witnesses testified that they saw defendant run after the shooting to catch up with the woman, who had moved to the driver's seat, and drive away. This post-killing behavior . . . speaks strongly to the premeditation and deliberation element.
>
>A rational jury could have concluded that defendant had formulated a plan, beginning with his telling Massey, "I'm on my way," to retaliate against the person or persons Massey told him had been shooting at him, and that the plan included a getaway vehicle and driver. Testimony that defendant said, "East Warren, bitch," after firing, further indicated that the shooting was retaliatory and deliberate. And voluminous evidence suggestive of a large feud, culminating in a street fight of "two lawns full of people" having occurred the day before the shooting and the day of the shooting, supported a rational jury's inference that defendant's actions constituted his willful contribution to the fight. We therefore conclude that defendant is not entitled to relief.

*Henderson*, 2013 WL 1223206 at *2.

When assessing a sufficiency of the evidence claim on habeas review, the Court may not re-weigh evidence or redetermine witness credibility. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). The court presumes the correctness of the facts relied upon by the Michigan Court of Appeals, and Petitioner has not put forth any evidence sufficient to rebut that presumption. The evidence that Petitioner drove to the site of the dispute at the behest of Massey, exited his car carrying a handgun, and, after several people pointed at a dispersing crowd to indicate the source of the shots fired at Massey,

fired into the crowd was more than sufficient to support the Michigan Court of Appeals' decision. The court will not disturb the decision of the Court of Appeals.

### D. Ineffective Assistance of Appellate Counsel

Finally, Petitioner argues that his appellate attorney was ineffective in failing to raise on direct review the claims raised by Petitioner on collateral review in state court. It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). In fact, "the process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy." *O'Sullivan v. Boerckel*, 526 U.S. 838, 858 (1999) (quotation marks and citations omitted).

Petitioner has failed to show that any of the claims he argues counsel should have raised were meritorious. Therefore, he was prejudiced by counsel's failure to raise these claims on direct review because "[a]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir.2001)). The court will deny habeas relief on this claim.

### III. CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal the court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition

15

should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted). In this case, reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the court will decline to issue a certificate of appealability.

## IV.  CONCLUSION

For the reasons set forth above, the court finds that Petitioner is not entitled to habeas corpus relief. Accordingly,

IT IS ORDERED that the petition for a writ of habeas corpus (ECF No. 1) is DENIED and a certificate of appealability is DENIED.

> s/Robert H. Cleland
> ROBERT H. CLELAND
> UNITED STATES DISTRICT JUDGE

Dated:  July 9, 2019

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 9, 2019, by electronic and/or ordinary mail.

> s/Lisa Wagner
> Case Manager and Deputy Clerk
> (810) 292-6522

S:\Cleland\Cleland\HEK\Staff Attorney\16-13223.HENDERSON.deny.2254.MBC.HEK.docx